Filed 1/27/21  P. v. Guiles CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>BRIAN LUTHER GUILES,<br><br>　　　　Defendant and Appellant. | C090922<br><br>(Super. Ct. No. 16F6155) |

Appointed counsel for defendant Brian Luther Guiles filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  After examining the record, we find no arguable error that would result in a disposition more favorable to defendant and affirm the judgment.

1

FACTS AND PROCEDURAL HISTORY

In June 2017, defendant was charged in Shasta County case No. 16F6155 with felony vandalism with property damage of approximately $25,000 (Pen. Code, § 594, subd. (b)(1), count one; statutory references that follow are to the Penal Code, unless otherwise stated).  He pleaded not guilty, and later waived a preliminary hearing.  Defendant was held to answer on the charge, and entered a general time waiver.

On June 13, 2017, defendant made a *Marsden* motion.  The court denied the motion following an in camera hearing.

In June 2019, the People moved to consolidate case No. 16F6155 with two additional cases defendant had pending in Shasta County:  case No. 16M7105, in which he was charged with disobeying a court order in contempt of court (§ 166, subd. (a)(4)) and possession of an injecting/smoking device (Health & Saf. Code, § 12022.1); and case No. 16M5000, in which he was charged with unauthorized entry of a dwelling house (§ 602.5) and disobeying a court order in contempt of court (§ 166, subd. (a)(4)).  In August 2019, the court granted the motion to consolidate case No. 16M5000, but left for the trial judge to rule on consolidating case No. 16M7105.

The following month, defense counsel moved in limine to "reverse" or reconsider the motion to consolidate.  Counsel also filed a motion to dismiss pursuant to section 995.  The court denied both motions.  The trial judge subsequently denied consolidation as to case No. 16M7105.

A September 2019 consolidated information charged defendant with felony vandalism in the amount of $400 or more (§ 594, subd. (b)(1), count one), unauthorized entry of a dwelling house (§ 602.5, count two), and contempt of court for disobeying a court order (§ 166, subd. (a)(4), count three).  The consolidated case was tried to a jury, and the following evidence was adduced at trial.

In 2010, defendant's mother, Meryl Guiles, bought a house in Burney and made numerous repairs to the property, including new paint, carpet and floors, and upgrades to the yard and plumbing. She testified that she owned the home by herself and did not share ownership with anyone else.

Shortly after the repairs were finished, defendant moved into the house with his fiancée. He was supposed to pay rent, but he never did.

Four years later, in 2014, Guiles gave defendant permission to remodel the master bathroom. Although defendant purchased the materials, he never completed the remodel.

In June 2015, Guiles entered the living room of the home; she did not observe any damage. At that time, she believed defendant had not yet completed the master bathroom remodel.

In December 2015, defendant told Guiles that he would drive her pickup truck through her house. Guiles, her daughter Shellie Helms, and Helms' husband reclaimed the truck from defendant.

Shortly thereafter, in January 2016, Guiles commenced eviction proceedings against defendant. Six months later, in July 2016, the sheriff's department removed defendant from the home. After he was gone, deputies met Helms at the house where she observed missing carpet and kitchen doors, various holes in the walls and the ceilings, a missing dishwasher and a missing bedroom door, and wall paintings of pandas and an alien, and lots of trash everywhere. In addition, sheetrock in the garage was missing, light sockets were damaged, and the pool's heating unit had been removed and garbage had been stored in the pool house. Guiles visited the house the next day and saw that it was "torn up." She had the house boarded up with plywood. Guiles later contacted a licensed contractor for repair work; he testified that he also observed damage throughout the house, including holes in the walls and ceilings.

On July 13, 2016, Helms texted defendant that he could meet on July 16 to retrieve his belongings. Defendant responded that he would report Helms for violating the law, and that he had reentered the house and intended to reoccupy it.

Helms subsequently called law enforcement, and officers met her at the property. There, they discovered that the front and rear doors were unlocked, and the exterior garage door appeared to have been "pried on." Someone had removed the board Guiles had placed in the runner of the rear sliding glass door to prevent it from opening. Helms showed defendant's text messages to one of the officers.

A short time later, Deputy Timothy Estes located defendant at a residence occupied by his girlfriend, about 300 yards from the house. Defendant initially denied entering the house, but after Estes referred to defendant's text messages with Helms, defendant admitted that he had broken into the house through the rear sliding glass door. According to defendant, his eviction from the property was legally invalid.

Guiles reported the damage to her insurance company and received $28,000 in insurance proceeds for repairs. She also personally paid an additional $5,000 for things not covered by insurance.

Defendant testified on his own behalf. According to him, he, his fiancée at the time, and Guiles agreed to purchase the house together in 2010. They agreed that his fiancée would contribute $28,000 towards the purchase price, and his mother would pay the remainder. Defendant was supposed to repay Guiles the money she contributed towards the house from wages he earned working for her. Under the agreement, defendant and his fiancée would own the house even if the purchase documents stated that Guiles owned it. Although they did not reduce the agreement to writing, the purchase occurred as they agreed. Afterwards, defendant or his fiancée paid taxes for the house and maintained the residence, and he believed he and his fiancée owned the home.

Defendant testified that he began remodeling the house in August 2015. A contractor friend was supposed to assist him, but he died before the remodel could be

4

completed. Defendant explained various repairs or remodeling projects he had undertaken at the house. For example, he unsuccessfully tried to retile the bathroom, but broke a pipe and had to remove portions of the wall behind the shower. He cut out some of the carpet because the broken pipe had leaked on the floor. He admitted selling the dishwasher because it did not match his other appliances. He claimed his friend's foot came through the ceiling, causing a hole, when he was in the rafters running wires.

Defendant admitted that he received the eviction notice and did not vacate the premises by the date on the notice. Following his eviction, defendant sent his sister a text message expressing his intent to reenter the house. Deputy Estes, however, dissuaded him from doing so. He testified that he never reentered the property after he had been evicted.

The jury found defendant not guilty of felony vandalism (count one), but guilty of unauthorized entry of a dwelling house and contempt of court (counts two and three). Following the jury's verdict, the prosecutor moved to dismiss three failure to appear counts alleged in case No. 16M5000, as well as the trailing misdemeanors alleged in case No. 16M7105. The court granted the motion.

The trial court suspended imposition of sentence and placed defendant on informal probation for 36 months with various terms and conditions, including serving 15 days of community service. The court imposed and stayed certain fees and fines after finding defendant lacked the ability to pay. Defendant timely appealed.

DISCUSSION

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief setting forth the facts of the case and requesting that this court review the record to determine whether there are any arguable issues on appeal. (*People v. Wende, supra*, 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30

5

days of the date of filing of the opening brief. More than 30 days elapsed, and we received no communication from defendant.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

DISPOSITION

The judgment is affirmed.

 

 

 

_____
HULL, Acting P. J.

We concur:

 

_____
ROBIE, J.

 

_____
MURRAY, J.

6